```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/22/2023__
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRIAN EDWARDS REYNOLDS,

                              Plaintiff,

                    -against-

MS. GROVE, DR. ALFONSO LINLEY, and ANN STEWART,

                             Defendants.

21-cv-4763 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Brian Reynolds ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, commenced this action against Defendants Ms. Grove ("Grove"), Dr. Alfonso Linley ("Linley"), and Ann Stewart ("Stewart") (collectively, the "Defendants") pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("Bivens") through a Complaint filed on May 26, 2021 (ECF No. 2) and subsequently amended on July 28, 2021 (Amended Complaint ("Am. Compl."), ECF No. 9). Plaintiff asserts *Bivens* claims for medical indifference and due process violations. (*Id.*) Presently before the Court is Defendants' motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. (ECF No. 67.) For the following reasons, Defendants' motion is GRANTED.

<strong>BACKGROUND</strong>

### I.    Factual Background

      The following facts are derived from the Complaint and the documents appended thereto and are assumed to be true for the purposes of this motion.

      In April 2020, Plaintiff, then an inmate at Federal Correctional Institute Otisville ("Otisville"), developed "itchy sores" on his scalp, chest, and arms. (Am. Compl. at 5.) Defendant

Stewart saw Plaintiff shortly thereafter, prescribing him a "tube" of "anti-itch cream" which "quickly" ran out. (*Id.*) Defendant Stewart did not allow Plaintiff to see Defendant Linley. (*Id.*) Instead, Defendant Stewart continued to prescribe Plaintiff one tube of anti-itch cream per month. (*Id.*)

Concerned by his skin condition, Plaintiff asked the staff to "investigate its cause and cure." (*Id.*) To that end, he spoke with "administrative staff" "when they visited [his] unit" during a COVID-19 lockdown period. (*Id.*) The staff instructed Plaintiff to "be patient." (*Id.* at 9.) Plaintiff and fellow incarcerated individuals in his unit believed the skin condition was caused by a mold infestation and urged prison staff to address the problem. (*Id.*) The staff eventually quarantined Plaintiff's unit and prescribed additional treatments to address any skin conditions related to the mold. (*Id.*) After one week in quarantine, Plaintiff was moved back to his unit. (*Id.* at 6.) "Nothing had been done" to eliminate the mold infestation. (*Id.*)

Plaintiff alleges any administrative remedies to address the mold infestation are "futile" because staff at Otisville lose or misplace complaints and often deem complaints "untimely." (*Id.*) Moreover, Plaintiff asserts that Defendant Grove and other "mid-level providers" stopped proactively visiting individuals in Plaintiff's unit and instead directed individuals to bring their medical requests to the medical staff. (*Id.* at 7.) Defendants Stewart and Grove "assured" Plaintiff he did not have "scabies," but they did not order any examinations to confirm. (*Id.*) When Defendant Linley saw Plaintiff, he identified Plaintiff had a skin condition but observed that the medical staff had "no authority" to do anything further. (*Id.*) Plaintiff alleges his skin condition is ongoing. (*Id.* at 9.)

**II.     Procedural Background**

Plaintiff commenced this action on May 26, 2021 (ECF No. 2), and later amended his Amended Complaint on July 28, 2021. Plaintiff brings *Bivens* claims against Defendants for two

federal constitutional violations: (1) an Eighth Amendment claim related to the medical staff's indifference to Plaintiff's skin condition; and (2) a due process claim related to the prison staff's interference with the medical staff's recommendations for Plaintiff's skin condition. (*See generally* Am. Compl.) Defendants now seek to dismiss Plaintiff's *Bivens* claims pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, Federal Rule of Civil Procedure 56. (ECF No. 67.) In opposing Defendants' motion, Plaintiff states that he did not "intend[] to include the allegation of staff interfering with efforts to file complaints" (ECF No. 73 at 8) and instead claims that "for over ONE YEAR, staff failed to take steps to find out [details regarding his skin condition] so that an effective cure could be used" (*id.* at 1).

Prior to filing their motion for summary judgment, Defendants served Plaintiff a "Notice to *Pro Se* Litigant Pursuant to Local Civil Rules 12.1 and 56.2."[1] (ECF Nos. 56, 71.) In support

---

[1] In the Second Circuit, a district court cannot grant a motion for summary judgment in a case involving a *pro se* litigant unless (1) the court apprises the *pro se* litigant of the consequences of failing to respond to the motion, *see Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994); (2) an opposing party has already provided the *pro se* litigant with the requisite notice, *see Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); or (3) it is clear that the *pro se* litigant understands "the nature and consequences of summary judgment," *see M.B. # 11072–054 v. Reish*, 119 F.3d 230, 232 (2d Cir. 1997). *See Vital v. Interfaith Medical Center*, 168 F.3d 615, 620–21 (2d Cir. 1999) (holding that the failure of the district court to apprise a *pro se* litigant of the consequences of failing to respond to a motion for summary judgment is a ground for reversal). To fulfill this duty, the United States District Courts for the Eastern and Southern Districts of New York adopted Local Rule 56.2 on September 23, 1999. Local Rule 56.2 provides in relevant part that:

> Any represented party moving for summary judgment against a party proceeding *pro se* shall serve and file as a separate document, together with the papers in support of the motion, the following "Notice To *Pro Se* Litigant Who Opposes a Motion For Summary Judgment" with the full texts of Fed. R. Civ. P. 56 and Local Civil Rule 56.1 attached. Where the *pro se* party is not the plaintiff, the movant shall amend the form notice as necessary to reflect that fact.

"The notice referred to in the rule advises the *pro se* litigant of the possibility that the complaint may be dismissed and informs the litigant that he or she must submit evidence countering the facts asserted by the defendant and raising issues of fact for trial." *Covello v. Depository Tr. Co.*, 212 F. Supp. 2d 109, 115 (E.D.N.Y. 2002). In short, "the focus of both *Vital* and Local Rule 56.2 is that the *pro se* litigant understands 'the consequences of failing to respond

of their motion, Defendants filed a statement of undisputed material facts outlining the Plaintiff's use, or lack thereof, of the prison's administrative procedures. (Defendants' Statement of Undisputed Material Facts ("Defs. Rule 56.1"), ECF No. 70.) Although Plaintiff has filed 82 formal grievances, 28 of which while housed at Otisville, Plaintiff did not file any administrative grievances related to the events described in his Amended Complaint. (*Id.* at ¶¶ 2, 4.) Plaintiff disagrees that he has filed 82 grievances, but he acknowledges that he has "knowledge and experience in utilizing the administrative remedy process." (Declaration of Brian Reynolds ("Reynolds Dec.") at ¶ 5, ECF No. 72.) Plaintiff admits he "didn't use the administrative remedy" here (id. at ¶ 10), but he did not do so because he believes "the administrative remedy would have been untimely as 20 days had lapsed while waiting for medical staff as we had just recently gone into lockdown [around April 7, 2020, according to Plaintiff] for the COVID-19 outbreak." (*Id.* at ¶ 7.)

## LEGAL STANDARDS

### I.    Fed. R. Civ. P. 12(b)(6)

On a Fed. R. Civ. P. 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss

---

to a motion for summary judgment' and receives notice that 'he must file his own affidavits contradicting his opponent's if he wants to preserve factual issues for trial.'" *Id.* (quoting *Vital*, 168 F.3d at 621).

will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

*Pro se* complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## II. Fed. R. Civ. P. 56

Under Federal Rule of Civil Procedure 56(c), summary judgment must be granted if "there is no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted). To prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

5

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original).

### III.   Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e)

Under the PLRA, an inmate is required to exhaust his available administrative remedies before filing a *Bivens* suit in federal court. 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The PLRA applies to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "The purpose of the PLRA is 'to reduce the quantity and improve the quality of prisoner suits . . . [and to afford] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004)).

The applicable procedural rules that a prisoner must exhaust "are defined not by the PLRA, but by the prison grievance process itself[,]" and "[t]he level of detail necessary in a grievance to comply with the grievance procedures will [therefore] vary from system to system and claim to claim[.]" *Jones*, 549 U.S. at 211. Relevant here, the BOP procedural rules provide for a four-step administrative grievance system for prisoner complaints. First, the inmate must "present an issue of concern informally" to prison staff, for example by way of a BP-8, so that the prison staff may

6

attempt to resolve the issue. *See* 28 C.F.R. § 542.13(a).  Second, if resolution proves unsuccessful, the inmate may submit a "formal written Administrative Remedy Request," or a BP-9, to the institution staff member designated to receive such requests—such as the warden at a plaintiff's facility.  (*See* 28 C.F.R. § 542.14.)  Third, an inmate may then appeal the Warden's response to the Regional Director on the appropriate form, here a BP-10.  (*See* C.F.R. § 542.15.)  Finally, if unsatisfied with the Regional Director's findings, the inmate may file a Central Office Administrative Remedy Appeal ("BP-11"), with the BOP's General Counsel.  (*See* C.F.R. § 542.15.)

The Supreme Court recently clarified that an inmate's failure to exhaust his administrative remedy may only be excused where the administrative remedy, "although officially on the books," was "unavailable" to him because it was "not capable of use to obtain relief." *Ross v. Blake*, 578 U.S. 632, 643 (2016).  This exception to the PLRA's exhaustion requirement applies in three circumstances: (1) when the administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44.

As failure to exhaust is an affirmative defense under the PLRA, it is the defendant's burden to establish that the plaintiff failed to meet the exhaustion requirements. *Jones*, 549 U.S. at 216. Moreover, whether the PLRA's exhaustion requirement has been satisfied may properly be decided by a court rather than a jury, as "the Seventh Amendment does not guarantee a jury trial on factual disputes regarding administrative exhaustion under the PLRA." *Messa v. Goord*, 652 F.3d 305, 310 (2d Cir. 2011) (per curiam).

## DISCUSSION

At the outset, Plaintiff did not exhaust his administrative remedies as required by the PLRA. Plaintiff admits as much in his Declaration, stating that he "didn't use the administrative remedy" (Reynolds Dec. at ¶ 10), but he did not do so because he believes "the administrative remedy would have been untimely as 20 days had lapsed while waiting for medical staff as we had just recently gone into lockdown [around April 7, 2020, according to Plaintiff] for the COVID-19 outbreak." (*Id.* at ¶ 7.) Whereas this Court historically had greater leniency to consider whether special circumstances existed to justify a plaintiff's failure to exhaust remedies, *see Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016), the Supreme Court stripped lower courts of this wider discretion in its recent decision in *Ross v. Blake*, 578 U.S. 632 (2016). In *Ross*, as discussed *supra*, the Supreme Court limited exceptions to the PLRA's exhaustion requirement to three circumstances: (1) when the administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44.

Plaintiff's case does not fall into one of these exceptions. First, Plaintiff does not allege or present evidence that "officers [are] unable to or consistently unwilling to provide any relief to aggrieved inmates" such that the administrative grievance procedure "operates as a dead end." *Id.* at 643. In other words, Plaintiff does not show that the prison's administrative process precludes the "possibility of some relief" or that "no such potential exists." *Id.* Nor does Plaintiff allege or present evidence that the administrative grievance procedure is "so opaque that it becomes, practically speaking, incapable of use." *Id.* To the contrary, Plaintiff affirms that he had "knowledge and experience in utilizing the administrative remedy process." (Reynolds Dec. at ¶ 5.)

Plaintiff rests his argument on the third exception: that the administrative remedy process was unavailable to Plaintiff through "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. To the extent Plaintiff believes the prison staff would engage in foul play regarding his complaint, the BOP contemplated that scenario by allowing incarcerated individuals to bypass the initial complaint filing and appeal directly to the Regional Director. *See* 28 C.F.R. § 542.14(d)(1). Plaintiff did not do so here. Moreover, to the extent Plaintiff argues COVID-19 lockdown prevented the filing of his claims (Reynolds Dec. at ¶ 7), his argument is belied by the allegations in the Amended Complaint. Plaintiff argues his skin condition was ongoing when he filed his Amended Complaint on July 28, 2021. Because BOP regulations allow a complainant "20 calendar days following the date on which the basis for the Request occurred" to file a complaint, 28 C.F.R. § 542.14(a), and the basis of Plaintiff's request is Defendants' ongoing indifference to Plaintiff's medical needs (*see generally* Am. Compl.), Plaintiff was entitled—as of the filing of his Amended Complaint—and likely *still* is entitled to submit a complaint through the administrative grievance process. Because Plaintiff was able to navigate any pandemic-related lockdowns to file numerous documents in federal court in the present matter, there is no reason to believe—and no evidence to suggest—that Plaintiff could not have done so using the administrative grievance process. Accordingly, Plaintiff has failed to exhaust his administrative remedies, and as a result, his claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

Because this Court dismisses Plaintiff's claims for failure to exhaust, Plaintiff's claims are dismissed without prejudice. Plaintiff's remedy is to commence a new action consistent with this order upon exhaustion of his claims.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 67 and to close the case.

The Clerk of Court is further directed to enter a judgment of dismissal without prejudice in favor of the Defendants.

The Clerk of Court is lastly directed to mail a copy of this Opinion & Order to *pro se* Plaintiff at his address listed on ECF and to show service on the docket.

SO ORDERED.

Dated: March 22, 2023
       White Plains, New York

NELSON S. ROMÁN
United States District Judge